UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RACHEL MOCHAN,                                    Case No. 9:22cv80915-RS
individually and
on behalf of all others similarly situated,

       Plaintiff,

v.

MADISON REED, INC.,


**DEFENDANT MADISON REED'S MOTION TO**
**COMPEL ARBITRATION AND STAY PROCEEDINGS**


Dated:  August 30, 2022                     /s/ Lee Stapleton
                                        Lee Stapleton (FBN 356778)
                                        Email: lstapleton@carltonfields.com
                                        Carlton Fields, P.A.
                                        2 MiamiCentral
                                        700 NW 1st Avenue, Suite 1200
                                        Miami, Florida 33136
                                        Telephone:  305-530-0050
                                        Facsimile:  305-530-0055

                                        Tyler G. Newby (admitted *pro hac vice*)
                                        Email: tnewby@fenwick.com
                                        555 California Street
                                        San Francisco, CA 94104

                                        Janie Y. Miller (admitted *pro hac vice*)
                                        Email: jmiller@fenwick.com
                                        228 Santa Monica Boulevard, Suite 300
                                        Santa Monica, CA 90401

                                        AnnaLise Bender-Brown (admitted *pro hac vice*)
                                        Email: abenderbrown@fenwick.com
                                        1191 Second Avenue, 10th Floor
                                        Seattle, WA 98101

                                        *Attorneys for Defendant Madison Reed, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

    A.   Plaintiff Mochan's Registration With Madison Reed's Website And Her
         Agreement To Its Terms Of Service .............................................................2

    B.   The Madison Reed Terms And Its Arbitration Provision ...........................3

    C.   The Present Action ......................................................................................4

III.    LEGAL STANDARDS ..........................................................................................4

IV.     ARGUMENT ..........................................................................................................5

    A.   The Terms Are Enforceable ........................................................................6

         1.   This Court Should Enforce The Terms' Choice Of Law Provision And
             Apply California Law .......................................................................6

         2.   Under Either California or Florida Law, Plaintiff And Madison Reed
             Entered An Agreement To Arbitrate.................................................7

    B.   The Terms Delegate The Threshold Question Of Arbitrability To The Arbitrator. 9

    C.   Even If This Court Did Determine Arbitrability, This Dispute Falls Within The
         Scope Of The Arbitration Agreement, And The Agreement Is Enforceable. ........11

         1.   This Dispute Is Within The Broad Scope Of The Arbitration
             Agreement. ......................................................................................11

         2.   The Arbitration Agreement Is Enforceable.................................13

             a.   The Terms Are Not Procedurally Unconscionable. ......................14

             b.   The Terms Are Not Substantively Unconscionable......................16

    D.   The Action Must Be Stayed While The Dispute Proceeds To Arbitration. ...........17

V.      CONCLUSION.....................................................................................................17

# CASES

*Aanderud v. Superior Court*,
13 Cal. App. 5th 880 (2017) ........................................................................13, 14

*Airbnb, Inc. v. Doe*,
336 So. 3d 698 (Fla. 2022).....................................................................................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..................................................................................................5

*AT&T Techs., Inc. v. Commc'ns. Workers of Am.*,
475 U.S. 643 (1986)................................................................................................12

*Attix v. Carrington Mortg. Srvs.*,
35 F. 4th 1284 (11th Cir. 2022) ......................................................................10, 17

*Basulto v. Hialeah Auto.*,
141 So. 3d 1145 (Fla. 2014).............................................................................14, 16

*Bazemore v. Jefferson Cap. Sys.*,
LLC, 827 F.3d 1325 (11th Cir. 2016)...................................................................5, 6

*Belcher v. Kier*,
558 So. 2d 1039 (Fla. 2d DCA 1990) ...................................................................14

*Bell v. Royal Seas Cruises, Inc.*,
No. 19-cv-60752-RUIZ/STRAUSS, 2020 WL 5742189 (S.D. Fla. May 13,
2020) ......................................................................................................................16

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) .............................................................................14

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................................................................15

*Carnevali v. Yardley Car Co.*,
452 F. Supp. 3d 1321 (S.D. Fla. 2019) .................................................................13

*Coast Plaza Doctors Hosp. v. Blue Cross of California*,
83 Cal. App. 4th 677 (2000) ..................................................................................12

*Cordas v. Uber Technologies, Inc.*,
228 F. Supp. 3d 985, 988-89 (N.D. Cal. 2017)........................................................7

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ...........................................................................7

*Drozdowski v. Citibank, Inc.*,
  No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543 (W.D. Tenn. Aug. 31, 2016)......................13

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)...........................................................................................................6

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................................................8

*Global Travel Marketing, Inc. v. Shea*,
  908 So. 2d 392 (Fla. 2005)................................................................................................9

*Greenberg v. Drs. Assocs., Inc.*,
  338 F. Supp. 3d 1280 (S.D. Fla. 2018) ...........................................................................13

*Hearn v. Comcast Cable Commc'ns, LLC*,
  992 F.3d 1209 (11th Cir. 2021) ........................................................................................5

*Info. Tech. & Eng'g Corp. v. Reno*,
  813 So.2d 1053 (Fla. 4th DCA 2002) ..............................................................................9

*Jackson v. Shakespeare Found., Inc.*,
  108 So. 3d 587 (Fla. 2013)..............................................................................................12

*Jpay, Inc. v. Kobel*,
  904 F.3d 923 (11th Cir. 2018) .........................................................................................10

*Keith v. Wells Fargo Fin. Am., Inc.*,
  No. 8:10-CV-1588-T-33EAJ, 2010 WL 4647227 (M.D. Fla. Nov. 9, 2010) .........................14

*Khalatian v. Prime Time Shuttle, Inc.*,
  237 Cal. App. 4th 651 (2015) ....................................................................................11, 12

*Kravets v. Anthropologie, Inc.*,
  No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712 (S.D. Fla. June 6, 2022) ....................15

*L&H Const. Co. v. Circle Redmont, Inc.*,
  55 So. 3d 630 (Fla. 5th DCA 2011) ..................................................................................8

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017).........................................................................................8, 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)...................................................................................................11, 13

*Morgan v. Sundance*,
  142 S. Ct. 1708 (2022)......................................................................................................5

iii

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......................................................................................................5, 11

*Murphy v. Courtesy Ford, L.L.C.*,
944 So. 2d 1131 (Fla. DCA 2006) ...........................................................................14

*Nathan v. Symantec Corp.*,
No. 17CV319332, 2018 WL 7201833 (Cal. Super. May 11, 2018) ..........................8

*Nevarez v. Forty Niners Football Co.*,
No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ............................8

*Pac. Inv. Co. v. Townsend*,
58 Cal. App. 3d 1 (1976) ...........................................................................................12

*Parker v. Ahmsi Ins. Agency Inc.*,
No. 15-23840-CIV-MARTINEZ-GOODMAN, 2019 WL 13178508 (S.D. Fla.
Aug. 2, 2019) .............................................................................................................14

*Pensacola Junior College Faculty Ass'n v. Pensacola Junior College Bd. of
Trustees*,
50 So. 3d 700 (Fla. 1st DCA 2010) ............................................................................9

*Pollak v. KeyBank, N.A.*,
2019 WL 6612064 (N.D. Ohio Dec. 5, 2019) ..........................................................13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967).....................................................................................................5

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010).....................................................................................................5, 9

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) ..........................................................................................13, 16

*Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)................................................................................................6, 9

*Segal v. Amazon.com, Inc.*,
763 F. Supp. 2d 1367 (S.D. Fla. 2011) .......................................................................8

*Seifert v. U.S. Home Corp.*,
750 So. 2d 663 (Fla. 1999)........................................................................................12

*Selden v. Airbnb, Inc.*,
No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016)..................8, 16

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444 (Cal. App. 2021) ..................................................................7

*Sims v. Clarendon Nat'l Ins. Co.*,
    336 F. Supp. 2d 1311 (S.D. Fla. 2004) .................................................................5

*Terminix Int'l Co. v. Palmer Ranch LP*,
    432 F.3d 1327 (11th Cir. 2005) ...........................................................................10

*Vanderham v. Brookfield Asset Mgmt., Inc.*,
    102 F. Supp. 3d 1315 (S.D. Fla. 2015) .................................................................6

*Vianna v. Doctors' Mgmt. Co.*,
    27 Cal. App. 4th 1186 (1994) ..............................................................................11

*Williams v. MetroPCS Wireless, Inc.*,
    No. 09-22890-CIV, 2010 WL 1645099 (S.D. Fla. Apr. 21, 2010) ....................9, 16

*Wright v. Greensky, Inc.*,
    No. 20-cv-62441-BLOOM/Valle, 2021 WL 2414170 (S.D. Fla. Jun. 14, 2021) ....................5

*Xena Investments, Ltd. v. Magnum Fund Mgmt. Ltd.*,
    726 F.3d 1278 (11th Cir. 2013) .............................................................................6

**STATUTES**

9 U.S.C. § 1 *et seq.* ....................................................................................................1

9 U.S.C. § 2 ................................................................................................................5

9 U.S.C. § 4 ................................................................................................................4

47 U.S.C. §§ 227, *et seq.* ...........................................................................................4

FAA Section 3 .................................................................................................... *passim*

Fla. Stat. § 501.059 ....................................................................................................4

Fla. Stat. § 682.02(1) .................................................................................................9

Fla. Stat. § 682.03(6) ...............................................................................................17

**OTHER AUTHORITIES**

Declaration of Tyler Newby ....................................................................................11

Declaration of Tyler Wozny ...............................................................................16, 17

Defendant Madison Reed, Inc. respectfully moves to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and to stay this proceeding under Section 3 of the FAA until the arbitrator enters a final award.

## I.      INTRODUCTION

Under settled law, this case is subject to arbitration, not litigation in court.  Plaintiff Rachel Mochan agreed to the Madison Reed Terms of Service (the "Terms") when she booked an appointment for hair coloring services on the Madison Reed website.  The Terms mandate that Mochan and Madison Reed arbitrate any disputes arising out of or relating to Madison Reed's website, services, products, Color Bar products and services, and mobile app.  This dispute, which arises out of Mochan's booking an appointment on Madison Reed's website, falls squarely within the broad scope of her agreement to arbitrate.  Ignoring her obligation under the Terms, Mochan now seeks to pursue a putative class action against Madison Reed.

Mochan must be compelled to resolve her claims in arbitration.  The FAA, which governs the arbitration agreement, requires the Court to stay this action until the dispute is resolved in arbitration if two threshold conditions are satisfied, as they are here.  First, Mochan entered a valid and enforceable arbitration agreement.  Second, the claims Mochan asserts are undoubtedly within the scope of the arbitration agreement she entered, as they relate to her use of Madison Reed's services.  While the parties delegated these threshold questions of arbitrability to the arbitrator, even if this Court were to decide these issues, the end result would be the same.

Madison Reed thus requests that the Court order Mochan to comply with the valid agreement, compel Mochan to arbitrate individually, and stay this action pending the outcome of the arbitration proceeding.

## II.     BACKGROUND

### A.     Plaintiff Mochan's Registration With Madison Reed's Website And Her Agreement To Its Terms Of Service

Madison Reed provides salon-quality, cruelty-free hair coloring products and services. Declaration of Tyler Wozny ("Wozny Decl.") ¶ 3.  Customers can order Madison Reed products for use at home or make an appointment for hair coloring services at its brick-and-mortar locations, referred to as the "Color Bar."  *Id.*  Madison Reed customers can visit its website to reserve Color Bar appointments.  *Id.* ¶ 4.  Before reserving an appointment on Madison Reed's website, a customer must agree to be bound by Madison Reed's Terms, which include an agreement to arbitrate any disputes with Madison Reed related to Madison Reed's services.  *See id.* ¶¶ 4-5, Exs. A, B.

Mochan agreed to Madison Reed's Terms, including its arbitration provisions, when she booked an appointment for the Color Bar on Madison Reed's website on December 15, 2021.  *Id.* ¶¶ 5-6.  Before completing the Color Bar appointment booking process on Madison Reed's website, every customer must click a button that states, "Confirm Booking."  *Id.* ¶ 5, Ex B.  On the same page as the "Confirm Booking" button, the customer is notified in clear and conspicuous language that "By clicking 'CONFIRM BOOKING' you agree to the Terms and Privacy Policy, as well as the cancellation and no-show policy."  *Id.* ¶ 5, Ex. B.  The word "Terms" is hyperlinked to a different page on Madison Reed's website, where the full text of the Terms is viewable.  *See id.*  By clicking on the "Confirm Booking" button when making her appointment, Mochan agreed to all of the provisions of the Terms, including the agreement to arbitrate disputes arising out of her use of Madison Reed services.  *Id.* ¶ 4-6, Ex. A.  During registration, Mochan also opted in to "Receive Promotion Emails" and "Receive Tips & Tricks Emails," and opted in to receive SMS text messages about her appointments.  *Id.* ¶ 6, Ex. C.

2

**B.     The Madison Reed Terms And Its Arbitration Provision**

The Terms contain a clear agreement to arbitrate all disputes arising from Mochan's use of

Madison Reed's services.  The Terms state in capitalized letters, in the second paragraph:

> IMPORTANT NOTICE REGARDING ARBITRATION FOR
> U.S. CUSTOMERS: WHEN YOU AGREE TO THESE TERMS
> YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO
> RESOLVE ANY DISPUTE BETWEEN YOU AND MADISON
> REED THROUGH BINDING, INDIVIDUAL ARBITRATION
> RATHER THAN IN COURT.

*Id.* ¶ 4, Ex. A at 1.

The "Agreement to Arbitrate" section of the Terms proceeds to provide details about the

arbitration agreement and the rules and procedure for arbitration.  The arbitration agreement

requires that "any dispute, claim or controversy arising out of or relating to these Terms or the

breach, termination, enforcement, interpretation or validity thereof or the use of the Services or

Content (collectively, "Disputes") will be settled by confidential binding arbitration" by the

American Arbitration Association (AAA) in accordance with its rules.  *Id.*, Ex. A at 8-9.  The

Terms define "Services" expansively to mean the Madison Reeds website "and our mobile device

application (the '**App**'), as well as use of our services when you visit one of our '**Color Bar**' hair

color salon locations. To make these Terms easier to read, the Site, our services, products, Color

Bar products and services, and App." *Id.*, Ex. A. at 1 (bold in original).  Mochan and Madison

Reed further agreed that both parties "waiv[ed] the right to a trial by jury or to participate as a

plaintiff or class member in any purported class action or representative proceeding."  *Id.*, Ex. A

at 8.  The parties are both afforded limited exceptions from binding arbitration for small claims

court and the protection of intellectual property rights.  *See id.*  The arbitration agreement further

provides that the FAA governs its enforcement and interpretation.  *Id.*, Ex. A at 9.

The arbitration agreement contains additional terms that make arbitration convenient for Madison Reed's customers.  For example, the arbitration will be conducted in the county where the customer resides.  *Id.*  Madison Reed further waives all rights to recover attorney's fees and expenses if it prevails in arbitration, while the customer will be entitled to an award of fees and expenses if she prevails.  *Id.*

The choice-of-law clause requires any action related to the Terms to be governed by California law, aside from the arbitration agreement.  *Id*., Ex. A at 8.

### C.    The Present Action

Despite agreeing to arbitrate her claims with Madison Reed, Mochan filed this purported class action against Madison Reed alleging violations of (1) 47 U.S.C. §§ 227, *et seq.* (the "TCPA"), and (2) the Florida Telephone Solicitation Act (the "FTSA"), Fla. Stat. § 501.059.  *See* Compl. ¶ 1.  Mochan alleges that Madison Reed violated the above statutes by sending "text message solicitations" to Mochan to promote its goods and services.  *See id*. ¶¶ 14-15, 19.  Mochan never served a written Demand for Arbitration on Madison Reed as was required under the arbitration agreement.  *See* Wozny Decl. ¶ 7, Ex. A at 9.  Mochan then commenced this class action in court in breach of the Terms she agreed to.  Because Mochan has ignored her obligations under the Terms, Madison Reed brings this motion to compel Mochan to arbitrate this dispute.

## III.   LEGAL STANDARDS

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract.  9 U.S.C. § 4.  When considering a motion to compel arbitration, "there are three factors for the court to consider in determining a party's right to arbitrate: (1) [whether] a written agreement exists between the parties containing an arbitration clause; (2) [whether] an arbitrable issue exists; and (3) [whether] the right to arbitration has been waived."

*Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (Altonaga, J.).  The Eleventh Circuit has explained that courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215, n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys.*, LLC, 827 F.3d 1325, 1333 (11th Cir. 2016)). "[A] district court may conclude as a matter of law that parties…enter[ed] into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore*, 827 F. 3d at 1333. "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Id.* "Conclusory allegations without specific supporting facts" are not sufficient to defeat a motion to compel arbitration. *See, e.g., Wright v. Greensky, Inc.*, No. 20-cv-62441-BLOOM/Valle, 2021 WL 2414170, at *15, n.13 (S.D. Fla. Jun. 14, 2021).

The FAA declares a liberal policy regarding the enforcement of arbitration provisions and strongly favors arbitration where there is evidence of assent to a valid agreement.  *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983).  Further, written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2).  The FAA's policy favoring arbitration makes "arbitration agreements as enforceable as other contracts …."  *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404, n.12 (1967)).  As such, "a court must hold a party to its arbitration contract just as the court would to any other kind."  *Id.*; *See also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

## IV.   ARGUMENT

Mochan entered an enforceable agreement to arbitrate disputes with Madison Reed.  Once the Court determines that an agreement to arbitrate exists, the court must examine the agreement

to determine whether the parties agreed to commit the questions of arbitrability—whether the agreement is enforceable and whether the dispute is within the scope of the arbitration agreement—to an arbitrator.  The Terms here delegate questions of arbitrability to the arbitrator by incorporating the AAA's rules, meaning that this Court should reserve ruling on whether Mochan's claims are arbitrable, as that question must be determined by the arbitrator.  *See Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  But even if the Court does rule on the arbitrability of Mochan's claims, her agreement to arbitrate is enforceable and her claims fall squarely within the scope of the arbitration clause.  Finally, as this is Madison Reed's first response to the complaint in this case, Madison Reed has not waived its right to arbitrate.  As such, this action must be stayed while the dispute proceeds to arbitration.

### A.  The Terms Are Enforceable

**1.  This Court Should Enforce The Terms' Choice Of Law Provision And Apply California Law.**

Courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether there is a valid agreement to arbitrate under the FAA.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Bazemore*, 827 F. 3d at 1329.  Mochan and Madison Reed entered into an enforceable agreement to arbitrate when Mochan indicated her assent to the Terms by clicking the "Confirm Booking" button to reserve her Color Bar appointment.  The Terms state that California law governs the Terms and "any action related thereto."  Wozny Decl. ¶ 4, Ex. A at 8.  Courts in the Eleventh Circuit have consistently enforced choice-of-law provisions like Madison Reed's.  *See, e.g*., *Xena Investments, Ltd. v. Magnum Fund Mgmt. Ltd*., 726 F.3d 1278, 1285–86 (11th Cir. 2013) (noting choice-of-law provisions are unenforceable only under circumstances of fraud, unfairness, or for public policy); *see also Vanderham v. Brookfield Asset Mgmt., Inc*., 102 F. Supp. 3d 1315, 1319 (S.D. Fla. 2015) (same).

The Court should therefore apply California law when determining whether Mochan entered an agreement to arbitrate.

> ### 2.      Under Either California or Florida Law, Plaintiff And Madison Reed Entered An Agreement To Arbitrate.

Under California law, "[m]utual assent, or consent, of the parties 'is essential to the existence of a contract.'" *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 460 (Cal. App. 2021), *reh'g denied* (Jan. 18, 2022), *review denied* (Apr. 13, 2022).  Here, Mochan manifested her consent when she clicked "Confirm Booking" to reserve her appointment with Madison Reed.

Many courts have found similar conduct sufficient to show mutual assent to form an online agreement to submit to arbitration.  In *Dohrmann v. Intuit, Inc.*, for example, the Ninth Circuit held that a similar process was sufficient to create an enforceable agreement under hyperlinked terms of service that contained an arbitration agreement.  *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (enforcing arbitration agreement).  There, the user "was required to click a 'Sign In' button, directly under which the following language appeared: 'By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.'"  *Id.*  The court held that the website therefore provided sufficient notice to a reasonably prudent internet user of its Terms of Use, which include an arbitration clause."  *Id.*  Similarly, in *Cordas v. Uber Techs., Inc.*, the plaintiff was on notice of, and assented to, defendant Uber's terms when signing up for an online account.  228 F. Supp. 3d 985, 988–89 (N.D. Cal. 2017).  There, in order to create an account, the plaintiff had to click "DONE" on a page that presented the following hyperlinked disclosure: "By Creating an Uber account, you agree to the Terms & Conditions and Privacy Policy."  *Id.*

Here, Mochan formed a valid agreement through the act of clicking the "Confirm Booking" button.  She received clear and conspicuous notice stating, "By clicking 'CONFIRM BOOKING'

you agree to the Terms …"  The Terms containing the arbitration agreement were hyperlinked, clearly presented, and Mochan had ample opportunity to review them before proceeding with booking her appointment.  Wozny Decl. ¶ 5, Ex. B.  Indeed, nothing differentiates this case from the legion of cases where courts have approved similar clickwrap agreements.  *See, e.g.*, *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 76–79 (2d Cir. 2017) (finding that the plaintiff agreed to Uber's terms by pressing "Register" button above notice stating that, "by creating an Uber account," users agreed to terms of service); *Nevarez v. Forty Niners Football Co.*, No. 16-CV-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017) (finding that the Ticketmaster website prominently informed the plaintiffs that they agreed to terms of use, by clicking either "Accept and Continue" or "Sign In" to register or sign in to their account, and by clicking "Submit Order" to finalize their purchase); *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (finding the plaintiff agreed to Airbnb's Terms of Service by clicking the sign up box near notice stating, "By signing up, I agree to Airbnb's Terms of Service"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause based on disclosure below "Sign Up" button); *Nathan v. Symantec Corp.*, No. 17CV319332, 2018 WL 7201833, at *2 (Cal. Super. May 11, 2018) (concluding plaintiff agreed to online terms and license agreement where the purchase page notified her that she agreed to those terms when she completed the purchase transaction).

Even if this Court finds that the California choice-of-law provision does not apply, Florida law compels the same result.  "In Florida and the federal circuits ... clickwrap agreements are valid and enforceable contracts."  *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (internal quotations omitted); *see also L&H Const. Co. v. Circle Redmont, Inc*., 55 So. 3d 630, 634 (Fla. 5th DCA 2011) ("a valid contract arises when the parties' assent is … inferred in

whole or in part from the parties' conduct."); *Williams v. MetroPCS Wireless, Inc*., No. 09-22890-CIV, 2010 WL 1645099, at *6 (S.D. Fla. Apr. 21, 2010) (enforcing arbitration agreement where plaintiff continued to use a defendant's services after receiving the company's terms of service and notice that continued use represented agreement to the terms).  And Florida similarly favors the enforceability of arbitration clauses.  *Global Travel Marketing, Inc. v. Shea*, 908 So. 2d 392, 397 (Fla. 2005); *see also* Fla. Stat. § 682.02(1).  Further, "doubts as to the scope of an agreement to arbitrate are to be resolved in favor of arbitration." *Info. Tech. & Eng'g Corp. v. Reno*, 813 So.2d 1053, 1055 (Fla. 4th DCA 2002).  Arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of "an interpretation that covers the asserted dispute." *Pensacola Junior College Faculty Ass'n v. Pensacola Junior College Bd. of Trustees*, 50 So. 3d 700, 703 (Fla. 1st DCA 2010).

Therefore, the Court should find that the first issue comes out in favor of arbitration—Mochan and Madison Reed entered into a valid and enforceable agreement to arbitrate when Mochan registered for an account to create her Color Bar appointment.

### B.    The Terms Delegate The Threshold Question Of Arbitrability To The Arbitrator.

Because the arbitration agreement provides that the AAA's Consumer Rules govern the arbitration, any challenges Plaintiff may raise as to the validity of the arbitration agreement and its scope are for the arbitrator to decide, not the Court. *Rent–A–Center,* 561 U.S. at 68–69.  As the Supreme Court explained in *Schein*, 139 S. Ct. at 529, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."

As the Florida Supreme Court recently recognized when holding that incorporation of the AAA Consumer Rules into a click-wrap agreement delegates issues of arbitrability to the arbitrator, "[a]ll of the federal circuit courts of appeal to consider the issue have consistently agreed that incorporation by reference of arbitral rules into an agreement that expressly empower an arbitrator to resolve questions of arbitrability clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability." *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 703 (Fla. 2022) (collecting cases). That is true of the Eleventh Circuit, which has held multiple times that arbitration agreements that adopt the AAA rules for arbitrations delegate questions of arbitrability to the arbitrator. *See, e.g.*, *Attix v. Carrington Mortg. Srvs.*, 35 F. 4th 1284, 1298 (11th Cir. 2022) (holding that arbitration agreement's selection of the AAA's Consumer Rules delegates questions of arbitrability to the arbitrator); *Jpay, Inc. v. Kobel*, 904 F.3d 923, 937-39 (11th Cir. 2018) (interpreting incorporation of the AAA's Consumer and Commercial Rules "as clearly and unmistakably evincing an intent to delegate questions of arbitrability"); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005) (agreement's selection of the AAA's Commercial Rules delegates arbitrability to the arbitrator).

By providing that the AAA Rules will apply to the arbitration, the arbitration agreement here clearly delegates questions of arbitrability to the arbitrator. *See* Wozny Decl. ¶ 4, Ex. A at 8-9 (referencing the AAA rules, incorporating the AAA rules via hyperlink, and stating the parties agree to arbitrate issues of "enforcement, interpretation, or validity" of the Terms). That is because Rule 14(a) of the AAA's Consumer Rules reserve questions of jurisdiction for the arbitrator to decide:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

*See* Declaration of Tyler Newby, Ex. A (R-14. Jurisdiction).  Rule 7(a) of the AAA's Commercial Rules is identical.  *See id.*, Ex. B (R-7. Jurisdiction).  Here, the arbitration agreement clearly states that "[t]he arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the 'AAA Rules') then in effect[.]"  Wozny Decl. ¶ 4, Ex. A at 9; *see also* Newby Decl. ¶ 2, Ex. A at R-14 (stating the arbitrator has the authority to determine jurisdiction and arbitrability).[1]  Thus, this court should compel arbitration, leaving any determination of arbitrability to the arbitrator.

C.    **Even If This Court Did Determine Arbitrability, This Dispute Falls Within The Scope Of The Arbitration Agreement, And The Agreement Is Enforceable.**

1.    **This Dispute Is Within The Broad Scope Of The Arbitration Agreement.**

Even if this Court were to decide whether this dispute falls within the scope of the arbitration agreement, this dispute is well within the broad scope of the arbitration agreement. "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone*, 460 U.S. 1, 24-25 (1983); *Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal. App. 4th 651, 658 (2015) (holding that courts should resolve doubts as to the application of an arbitration clause to a particular dispute in favor of arbitration).  California law similarly favors a liberal interpretation of the application of the arbitration agreement.  *Vianna v. Doctors' Mgmt. Co*., 27 Cal. App. 4th 1186, 1189 (1994)

---

[1] The AAA's Supplementary Procedures for Consumer Related Disputes have been amended and renamed the Consumer Arbitration Rules.  Newby Decl. Ex. A at R-1(a)1).

("Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.") (citations omitted).

Mochan's claims are covered by the arbitration agreement.  While this question is reserved for the arbitrator in this case, Mochan cannot show that her claims fall outside the scope of the broadly defined arbitration provision.  Further, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted); *Pac. Inv. Co. v. Townsend*, 58 Cal. App. 3d 1, 9 (1976) (same); *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 686 (2000) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.").

Here, Mochan agreed to arbitrate "any" claims related to Madison Reed's services or content.  The clause "any dispute, claim or controversy arising out of or relating to" the use of Madison Reed's services and content should be interpreted broadly.  Wozny Decl. ¶ 4, Ex. A at 8. California courts have consistently held that this language covers related claims.  *Blue Cross*, 83 Cal. App. 4th at 686 (giving broad effect to agreement to arbitrate "any problem or dispute" arising under the terms of the service agreement); *Khalatian*, 237 Cal. App. 4th at 659 ("The language 'arising out of or relating to' as used in the parties' arbitration provision is generally considered a broad provision.").[2]  All of Mochan's claims against Madison Reed arise from Madison Reed's

---

[2] In Florida, where an arbitration provision requires arbitration for claims or controversies "arising out of or relating to" the subject contract, that provision is considered broad.  A claim or controversy "relates to" an agreement if it has a significant relationship to the contract's terms and provisions. *Jackson v. Shakespeare Found., Inc*., 108 So. 3d 587, 593 (Fla. 2013).  Because Florida courts generally favor arbitration provisions, they "will try to resolve an ambiguity in an arbitration provision in favor of arbitration." *Id*. (citing *Seifert v. U.S. Home Corp*., 750 So. 2d 663, 636 (Fla. 1999)).

services, *i.e.*, Madison Reed's website and Color Bar, and relate to Madison Reed's content, *e.g.*, the allegations related to Madison Reed's marketing communications.  *See* Compl. ¶¶ 13-18. Because Mochan alleges statutory violations grounded in her use of Madison Reed's services, she must be compelled to arbitrate those claims.  *See Mitsubishi Motors Corp*., 473 U.S. at 625, n.13 ("… insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability."). Indeed, courts have frequently compelled TCPA claims to arbitration pursuant to a contractual arbitration provision.  *See, e.g.*, *Greenberg v. Drs. Assocs., Inc.*, 338 F. Supp. 3d 1280 (S.D. Fla. 2018) (Ungaro, J.) (compelling arbitration of TCPA claim); *Carnevali v. Yardley Car Co.*, 452 F. Supp. 3d 1321 (S.D. Fla. 2019) (Dimitrouleas, J.) (same); *Pollak v. KeyBank, N.A.*, No. 1:19-cv-1866, 2019 WL 6612064, at *2 (N.D. Ohio Dec. 5, 2019) (Nugent, J.) (stating that "the Court must determine, since this claim arises under a federal statute, if Congress intended those claims to be nonarbitrable" and concluding that "it does not appear that Congress intended TCPA claims to be nonarbitrable."); *Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543, at *9 (W.D. Tenn. Aug. 31, 2016) (Anderson, J.) (finding that numerous courts have examined the issue of Congress's intent concerning arbitrability of TCPA claims and none have found that Congress intended TCPA claims to be nonarbitrable).

### 2.    The Arbitration Agreement Is Enforceable.

While Mochan carries the burden to show that the Terms are unconscionable if she makes such an argument, she will not be able to make that showing.  *See Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910–11 (2015) (finding that consumer failed to meet his burden to show that arbitration agreement in consumer contract was unconscionable); *see also Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 894 (2017) (holding consumer failed to meet burden to show arbitration agreement between company and consumer was unconscionable and enforcing

delegation clause in agreement); *Basulto v. Hialeah Auto*., 141 So. 3d 1145, 1159 (Fla. 2014) (noting that both "procedural and substantive unconscionability must be established to avoid enforcement of the terms within an arbitration agreement"); *Keith v. Wells Fargo Fin. Am., Inc*., No. 8:10-CV-1588-T-33EAJ, 2010 WL 4647227, at \*3 (M.D. Fla. Nov. 9, 2010) (interpreting Florida law and finding that customer failed to carry burden to show arbitration agreement was procedurally and substantively unconscionable); *Murphy v. Courtesy Ford, L.L.C*., 944 So. 2d 1131, 1134 (Fla. DCA 2006) ("The party seeking to avoid the arbitration provision has the burden to establish unconscionability.").

### a.   The Terms Are Not Procedurally Unconscionable.

Unconscionability can be procedural or substantive.  Procedural unconscionability arises when there is unequal bargaining power in the making of the agreement resulting from hidden terms or a lack of choice.  *Aanderud,* 13 Cal. App. 5th at 896*; see also Belcher v. Kier*, 558 So. 2d 1039, 1042 (Fla. 2d DCA 1990) (holding that procedural unconscionability hinges on whether the consumer has "absence of any meaningful choice" in whether to accept contract terms).

Here, Mochan was presented with meaningful choice to view and agree to the Terms in exchange for the benefit of Madison Reed's offerings.  Wozny Decl. ¶¶ 4-6.  Mochan could easily have declined these Terms and picked a similar company from which she could obtain hair coloring products and services.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007) ("The availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice."); *see also Parker v. Ahmsi Ins. Agency Inc*., No. 15-23840-CIV-MARTINEZ-GOODMAN, 2019 WL 13178508, at \*16 (S.D. Fla. Aug. 2, 2019) (finding that where plaintiffs could have gone elsewhere for purchase of the product they were suing over, there was a "total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness").

Further, Mochan has no claim for surprise, given that Madison Reed clearly and conspicuously presented the Terms and its arbitration provisions, thereby providing Mochan conspicuous notice that she was assenting to the Terms. *See* Wozny Decl. ¶ 5, Ex. B. Madison Reed instructs users on its appointment booking flow that by clicking the "Confirm Booking" button, they are agreeing to be bound by the Terms. *See* Wozny Decl. ¶ 5, Ex. B. The booking flow places the text of the hyperlink to the Terms in a different color than the surrounding text and underlines the word "Terms" to signify that it is a hyperlink a user can click on to read the full text of the Terms. *Id; see Meyer v. Uber Techs., Inc*., 868 F.3d 66, 79 (2d Cir. 2017) (finding similarly hyperlinked terms "reasonably conspicuous" and concluding "a reasonably prudent smartphone user would have constructive notice of the terms"). Additionally, the Terms appear on the same page as the "Confirm Booking" button, indicating to users that they will be bound to the Terms when they confirm their Color Bar appointment. *Id*. This way of obtaining users' consent to the Terms is sufficient to put a website user on notice that they are assenting to arbitrate. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) (indicating that "including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions'" would be sufficient to notify a user of the legal significance of action taken to enter contract); *Kravets v. Anthropologie, Inc*., No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712 (S.D. Fla. June 6, 2022) (finding consumer had notice she was assenting to arbitration agreement where terms of agreement were clearly displayed and contained visible hyperlinks and button indicated the agreement users were assenting to). Further, the standard governing the reasonable conspicuousness of such an agreement is what a reasonably prudent Internet user in the present day would observe when using a web-based interface such as Madison Reed's. *See, e.g*., *Meyer*, 868 F. 3d at 77.

Internet users who agree to accept online terms are by now fully aware that these agreements will govern their rights, even if the user chooses not to read the terms she accepts. *See, e.g.*, *Selden*, 2016 WL 6476934, at *5; *Sanchez*, 61 Cal. 4th at 915. *See also Bell v. Royal Seas Cruises, Inc*., No. 19-cv-60752-RUIZ/STRAUSS, 2020 WL 5742189 (S.D. Fla. May 13, 2020) (collecting Florida cases noting that a relatively low level of notice to consumers is necessary where plaintiffs contest that they assented to a company's terms of service online). Mochan was informed that she was agreeing to the Terms when she booked her Color Bar appointment, placing her on inquiry notice of the same. Even if she chose to not read the Terms, she is still bound to her agreement to them. *See MetroPCS*, 2010 WL 1645099, at *6 (finding that plaintiff "was on notice of the Terms and Conditions of Service, and … is therefore deemed to have accepted and agreed to be bound by them, including the arbitration provision contained therein, even if she never read them").

Mochan was presented with a fair opportunity to review the agreement and cannot contend she was unfairly oppressed by the Terms.

### b.     The Terms Are Not Substantively Unconscionable.

Substantive unconscionability arises if there are "overly harsh" or "one-sided" results of an agreement. *Sanchez*, 61 Cal. 4th at 910. *See also Basulto v. Hialeah Auto*., 141 So. 3d at 1157-58, n.4 (citing *Walker-Thomas Furniture*, 350 F.2d at 449-50) (stating that substantive unconscionability focuses on whether the terms are "unreasonably favorable" to the other party and "whether the terms of the contract are so unfair that enforcement should be withheld").

The Terms contain several provisions that make arbitration fair for both sides. Both parties waive their right to a jury trial or class action, submitting the dispute to a neutral under the AAA rules, while both parties reserve limited rights to seek judicial relief relating to protection of intellectual property. Wozny Decl. ¶ 4, Ex. A at 8-9. The Terms also contain provisions favorable

to Mochan.  For example, the arbitration is to be conducted in the county where the customer resides, and Madison Reed waives all rights to recover attorney's fees and expenses if it prevails in arbitration, while the customer will be entitled to an award of fees and expenses if she prevails. *Id.*

In sum, Mochan agreed to an enforceable arbitration agreement, and she will not be able to meet her burden to show unconscionability.

**D.      The Action Must Be Stayed While The Dispute Proceeds To Arbitration.**

Under the FAA, this Court must stay proceedings if it is satisfied that an issue before it is subject to arbitration under an agreement.  9 U.S.C. § 3; *see also Attix*, 35 F. 4th at 1294 (quoting 9 U.S.C. § 3 and holding that a court must stay proceeding "upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement"); *Cf.* Fla. Stat. § 682.03(6) ("If a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section.").

Madison Reed requests that all proceedings in the suit be stayed pending completion of arbitration.

**V.      CONCLUSION**

Madison Reed respectfully requests that the Court compel Mochan to arbitrate this dispute and stay this action.

**S.D. FLA. L.R. 7.1(a)(3) CERTIFICATION**

Counsel for Defendant, Madison Reed, Inc. conferred with counsel for Plaintiff via email on August 9, 2022 and August 29, 2022.  Plaintiff is opposed to the issuance of the requested relief.

Dated:   August 30, 2022

*/s/ Lee Stapleton*
Lee Stapleton (FBN 356778)
Email: lstapleton@carltonfields.com
Carlton Fields, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone:  305-530-0050
Facsimile:  305-530-0055

Tyler G. Newby (admitted *pro hac vice*)
Email: tnewby@fenwick.com
555 California Street
San Francisco, CA 94104

Janie Y. Miller (admitted *pro hac vice*)
Email: jmiller@fenwick.com
228 Santa Monica Boulevard, Suite 300
Santa Monica, CA 90401

AnnaLise Bender-Brown (admitted *pro hac vice*)
Email: abenderbrown@fenwick.com
1191 Second Avenue, 10th Floor
Seattle, WA 98101

*Attorneys for Defendant Madison Reed, Inc.*